2018 IL App (3d) 170275

Opinion filed February 22, 2018

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| PATRICIA HAND, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-17-0275 |
| | ) | Circuit No. 16-L-457 |
| WILLIAM HAND, | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | Roger D. Rickmon, |
| | ) | Judge, presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Presiding Justice Carter and Justice Lytton concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, Patricia Hand, sued her husband, William Hand, for negligence stemming from a vehicle accident that occurred in Indiana. The circuit court dismissed the action after finding that an Indiana statute addressing interspousal immunity applied to bar her cause of action. On appeal, Patricia argues that the court erred when it dismissed her complaint, as she contends that Illinois law, which does not prohibit interspousal tort actions, should apply. We reverse and remand for further proceedings.

¶ 2                                    FACTS

¶ 3          Patricia and William married in 1971 and have lived in Illinois since December 15, 1971.
On June 24, 2014, they embarked in a motor home for Orlando, Florida, for a vacation. Two
grandchildren accompanied them on the trip. On July 1, 2014, they began their return trip, which
included two overnight stops—one in Georgia and one in Louisville, Kentucky.

¶ 4          On July 6, 2014, they left Louisville with the intention of driving home to Crete, Illinois.
However, while in Indiana, William lost control of the vehicle, which caused it to strike a
concrete wall. Patricia was injured in the accident.

¶ 5          On June 20, 2016, Patricia filed a three-count complaint, alleging that William's
negligence caused the crash. The only count at issue in this appeal is count I, which alleged that
Patricia sustained injuries and incurred damages as a result of the accident.

¶ 6          William filed a motion to dismiss, alleging that Indiana's statute on the transportation of
guests operated to bar Patricia's cause of action. In relevant part, that statute contains an
interspousal immunity provision: "[t]he owner, operator, or person responsible for the operation
of a motor vehicle is not liable for loss or damage arising from injuries to or the death of *** the
person's spouse." Ind. Code Ann. § 34-30-11-1 (West 2014) (hereinafter Indiana Guest Statute).

¶ 7          On November 21, 2016, the circuit court held a hearing on the motion to dismiss. After
hearing arguments, the court dismissed the complaint and gave Patricia 28 days to replead. In so
ruling, the court told Patricia's attorney, "[y]ou read [*Miller v. Hayes*, 233 Ill. App. 3d 847
(1992)] and you show me some facts like they have in Miller that the conduct started here and
we'll re-address the issue."

¶ 8          On December 12, 2016, Patricia filed an amended complaint. The only changes to count I
were the addition of six sentences that stated the parties married in 1971, had been residents of

2

Illinois since December 15, 1971, left for vacation to Orlando on June 24, 2014, left Orlando for Crete on July 1, 2014, made overnight stops in Georgia and Kentucky, and left Kentucky on July 6, 2014, with the intention of arriving back home in Crete.

¶ 9 William filed a motion to dismiss the amended complaint, alleging, again, that Indiana's Guest Statute operated to bar Patricia's cause of action.

¶ 10 The circuit court held a hearing on April 6, 2017, on William's motion to dismiss. After hearing arguments, the court found no reason to differ from its original ruling that Indiana law applied.

¶ 11 Patricia appealed.

¶ 12 ANALYSIS

¶ 13 On appeal, Patricia argues that the circuit court erred when it granted William's motion to dismiss. Specifically, she contends that the court's choice-of-law ruling was incorrect, as Illinois law should apply to the case.

¶ 14 William initially argues that because Patricia did not file a motion to reconsider the circuit court's dismissal of the original complaint, she has waived her right to contest the court's application of Indiana law. Notably, William cites no law that supports his argument that the filing of a motion to reconsider was necessary in this case.

¶ 15 We note that while the circuit court's dismissal of the first complaint did not use the language "without prejudice," its ruling was clearly that type of dismissal. When the court dismissed the first complaint, it told Patricia's attorney, "[y]ou read [*Miller v. Hayes*, 233 Ill. App. 3d 847 (1992)] and you show me some facts like they have in Miller that the conduct started here and we'll re-address the issue." Clearly, the court was intending to revisit its choice-of-law ruling. See *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 24 (holding that "a

3

dismissal 'without prejudice' signals that there was no final decision on the merits and that the plaintiff is not barred from refiling the action"). Thus, it was not necessary for Patricia to file a motion to reconsider before filing her amended complaint. Accordingly, we reject William's waiver argument.

¶ 16 On the merits of Patricia's claim, we first note that we review the grant of a motion to dismiss *de novo*. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. The circuit court's choice-of-law determination is also subject to *de novo* review. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007).

¶ 17 Regarding choice-of-law determinations, Illinois courts have long followed what is now known as the Second Restatement of Conflict of Laws. *Id.* at 155. Our supreme court has summarized the process as follows:

> "[A] court begins a choice-of-law analysis in a tort case by ascertaining whether a specific presumptive rule, such as section 146 in a personal injury action, applies to the disputed conflict. Next, if the presumptive rule points to a specific jurisdiction, then the court must test this presumptive choice against the principles embodied in section 6 in light of the relevant contacts identified by the general tort principle in section 145. The presumptive choice controls unless overridden by the section 145 analysis." *Id.* at 175.

The first step in the analysis is to isolate the issue and determine if a conflict exists. *Id.* at 155.

¶ 18 It is important to note that the circuit court's ruling in this case was that the interspousal immunity provision in Indiana's Guest Statute applied to bar Patricia's claim. The concomitant issue of whether Illinois or Indiana law applies regarding whether a tort was committed is a

4

separate issue that was not actually decided in the court below. See, *e.g.*, Restatement (Second) of Conflict of Laws § 145 cmt. d (Supp. 2015) (stating that "[e]ach issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states"). In other words, the only issue before this court is whether Illinois or Indiana law applied regarding interspousal immunity.

¶ 19    The parties acknowledge that a conflict exists in this case between Illinois and Indiana law regarding interspousal immunity. If it is applied in this case, Indiana's Guest Statute would prohibit Patricia from suing William for negligence stemming from the motor vehicle accident. Ind. Code Ann. § 34-30-11-1 (West 2014). However, Illinois has no such limitation, as the statute that provided for interspousal tort immunity in Illinois was abolished in 1988. See, *e.g.*, *Kukla v. Kukla*, 184 Ill. App. 3d 585, 588 (1989); *Pinorsky v. Pinorsky*, 217 Ill. App. 3d 165, 166 (1991). Curiously, the parties do not address this preliminary issue of interspousal immunity as it is addressed in the Restatement and the Illinois cases that have decided such issues.

¶ 20    It is true that in typical personal injury cases, the presumptive rule is that "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws § 146 (Supp. 2015). However, the question of interspousal immunity is not a question *of* a tort itself. Rather, it is a question of a particular issue *in* tort. See Restatement (Second) of Conflict of Laws § 145 cmt. a (Supp. 2017) (stating that sections 146-55 address rules for particular torts, while sections 156-174—which includes interspousal immunity in section 169—address rules for particular issues in tort). Thus,

5

the presumptive rule of section 146 does not apply to the issue of interspousal immunity in this case.

¶ 21    Section 169 addresses intrafamily immunity occurring in tort cases and states that "[t]he applicable law will usually be the local law of the state of the parties' domicil [*sic*]." Restatement (Second) of Conflict of Laws § 169 (1971). In relevant part, Comment b addresses the rationale behind this rule:

> "An immunity from tort liability is commonly possessed in varying circumstances by one spouse against the other spouse ***. Reasons frequently advanced to explain the existence of such immunity are the common law doctrine of the legal identity of the spouses, the desire to foster and preserve marital harmony and parental discipline, and the desire to protect insurance companies from false claims. Whatever the true explanation, the state of the parties' domicil [*sic*] will almost always be the state of dominant interest, and, if so, its local law should be applied to determine whether there is immunity in the particular case. One possible situation where the state of the parties' domicil [*sic*] would not be that of dominant interest is where the parties' relationship to the state of their domicil [*sic*] is considerably less close than is their relationship to some other state." Restatement (Second) of Conflict of Laws § 169 cmt. b (1971).

¶ 22    Section 169 also states, however, that "[t]he law selected by application of the rule of § 145 determines whether one member of a family is immune from tort liability to another

6

member of the family." Restatement (Second) of Conflict of Laws § 169 (1971). Accordingly, we turn to section 145. *Nelson v. Hix*, 122 Ill. 2d 343, 349 (1988).

¶ 23        Section 145 states:

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil [*sic*], residence, nationality, place of incorporation and the place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws § 145 (1971).

¶ 24        In performing the section 145 analysis, "the forum court should consider the relevant policies of all potentially interested states and the relevant interests of those states in the decision of the particular issue." *Townsend*, 227 Ill. 2d at 160-61 (citing Restatement (Second) of Conflict

7

of Laws § 145 cmt. e, at 419 (1971)). Also, the analysis is not intended merely to count contacts; "each contact is meaningful in light of the policies sought to be vindicated by the conflicting laws." *Id.* at 168.

¶ 25　　　In this case, the conduct and the injury took place in Indiana. However, Patricia and William were domiciled and resided in Illinois, where their relationship was centered. In evaluating these contacts, we note that when the location of the injury is merely fortuitous, it is not an important contact. *Id.* (citing Restatement (Second) of Conflict of Laws § 145 cmt. e, at 419 (1971)). More importantly, because the only question before us pertains to interspousal immunity and not whether a tort was committed, the contacts of paramount importance are the parties' domicile and where their relationship was centered. See *Nelson*, 122 Ill. 2d at 350.

¶ 26　　　The next step in the conflict-of-laws analysis is to consider these contacts in light of the principles listed in section 6. The factors appearing in section 6 that are relevant to this type of case are "the relevant policies of the forum"; "the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue"; and "the basic policies underlying the particular field of law." *Townsend*, 227 Ill. 2d at 170.

¶ 27　　　Our analysis is guided by three Illinois cases that have addressed interspousal immunity in the context of automobile accidents and conflict of laws. In *Wartell v. Formusa*, 34 Ill. 2d 57 (1966), a husband and wife, who were residents of Illinois, were driving through Florida when the vehicle that the husband was driving crashed, killing the husband and injuring the wife. *Id.* at 57-58. The wife sued the husband's estate, alleging negligence. *Id.* at 58. The circuit court dismissed the action after finding that Illinois's statute prohibiting interspousal actions operated to bar the wife's case. *Id.* While both Illinois and Florida had interspousal immunity laws at the time, the wife argued that both laws were unconstitutional such that the circuit court's judgment

8

was erroneous no matter which law applied. *Id.* The husband argued that no matter which law applied, the law was constitutional. *Id.* Due to the constitutionality question, the *Wartell* court found it was necessary to address the conflict-of-laws issue. *Id.* at 59. The court stated:

> "In our opinion, the law of Illinois clearly applies in this case. We can think of no reason why Florida law should control the question whether a husband and wife domiciled in Illinois should be able to maintain an action against each other for a tort committed during coverture. The fact that the alleged tortious act took place in Florida is of no significance in determining which law should govern the determination of this issue. The law of the place of the wrong should of course determine whether or not a tort has in fact been committed, but the distinct question of whether one spouse can maintain an action in tort against the other spouse is clearly a matter which should be governed by the law of the domicile of the persons involved. Here the domicile is Illinois. Illinois has the predominant interest in the preservation of the husband-wife relationship of its citizens, and to apply the laws of Florida to the question of whether interspousal tort suits may be permitted between Illinois residents would be illogical and without a sound basis. This position has been adopted by the [tentative draft of the Second Restatement of Conflict of Laws], which provides in part that 'whether one member of a family is immune from tort liability to another member of the family is determined

9

by the local law of the state of their domicile.' An increasing number of courts have also held this to be the better reasoned view. [Citations.] We also adopt this view and hold that in this case the Illinois immunity statute is determinative of the question of whether plaintiff may maintain this action against her deceased husband's estate." *Id.* at 59-60.

The court also held that the Illinois statute was constitutional and that the circuit court properly dismissed the action on Illinois law grounds. *Id.* at 60.

¶ 28    In *Nelson*, a Canadian husband and wife were driving in Illinois while visiting relatives when they were involved in a motor vehicle accident. *Nelson*, 122 Ill. 2d at 344. The wife was injured in the accident and later sued the husband, alleging negligence. *Id.* The *Nelson* court noted that Illinois law prohibited interspousal tort actions, while Ontario law permitted them. *Id.* at 347. Citing *Wartell* with approval, the *Nelson* court discussed section 169 in its section 145 analysis and concluded that Ontario law applied:

"Illinois *** has little interest in regulating the right of married foreign citizens to maintain actions in tort against each other. Because the Nelsons are not citizens of Illinois, this State has no governmental interest in the preservation of their marital relationship. Although Illinois possesses an interest in not having its courts used for collusive lawsuits, we believe that this interest is not furthered by barring interspousal tort suits by citizens of other States or countries.

10

Further, Ontario's interest in regulating the incidents of the family relationships of its domiciliaries outweighs any interest Illinois may have in protecting the expectations of insurance carriers who have issued policies here. ***

*** 

Finally, we note that many other forums have followed the Restatement's approach in applying the law of the marital domicile in conflict cases involving the question of interspousal immunity." *Id.* at 351-52.

¶ 29 In *Pinorsky*, a Floridian husband and wife were driving in Illinois when they were involved in a motor vehicle accident. *Pinorsky*, 217 Ill. App. 3d at 166. The wife, who was the passenger, sued her husband, who was the driver, alleging negligence. *Id.* In addressing the conflict-of-laws issue, the *Pinorsky* court cited *Nelson* with approval and concluded that Florida law applied regarding interspousal immunity. *Id.* at 169 (stating that "Illinois has little interest in regulating the right of married citizens of other States to maintain actions in tort against each other").

¶ 30 Applying the analyses of *Wartell*, *Nelson*, and *Pinorsky* to the instant case, we believe the parties' domicile is the most important contact such that the interspousal immunity question must be answered in favor of Illinois law. For the reasons stated in those cases, Illinois's interest in regulating the ability of its married domiciliaries to bring tort actions against each other outweighs any interests Indiana has in preventing those actions by guests who are merely passing through the state on their way back home to Illinois. See *Wartell*, 34 Ill. 2d at 59-60; *Nelson*, 122

11

Ill. 2d at 351-52; *Pinorsky*, 217 Ill. App. 3d at 169. Accordingly, we hold that the circuit court erred when it found that Indiana law applied to bar Patricia's cause of action.

¶ 31   For the foregoing reasons, we reverse the judgment of the circuit court of Will County and remand the case for further proceedings.

¶ 32                                    CONCLUSION

¶ 33   The judgment of the circuit court of Will County is reversed, and the cause is remanded for further proceedings.

¶ 34   Reversed and remanded.